FILED
Clerk
District Court

JAN 23 2008

for The Northern Mariana Islands
By_____
(Deputy Clerk)

UNITED STATES DISTRICT COURT
DISTRICT OF THE NORTHERN MARIANA ISLANDS

UNITED STATES of AMERICA,

        Plaintiff,

v.

GUO, Zhan Dong

        Defendant.

Case No.: CR 08 - 00005

AFFIDAVIT IN SUPPORT OF COMPLAINT AND WARRANT OF ARREST

I, DANIEL G. HOLCOMB, a Special Agent with the Drug Enforcement Administration (DEA), after being duly sworn, depose and say as follows:

1. I am a Special Agent with the DEA and have been so employed for about eight and one-half years. I am assigned to the DEA's Saipan office, located in the Commonwealth of the Northern Mariana Islands. The following is based on my own investigation or was provided to me by other law enforcement officers who participated in and are familiar with this investigation.

2. On January 9, 2008, Special Agents (SA's) and Task Force Officers (TFO's) assigned to the DEA's Saipan Office (office), in conjunction with detectives from the Commonwealth of the Northern Mariana Islands (CNMI) Department of Public Safety (DPS) debriefed a Confidential Source (CS) regarding narcotics traffickers on Tinian. The CS stated that s/he knew that a Chinese male, known to the CS only as "Tony," who was distributing methamphetamine from inside and in front of the Pacific Laundry, located in San Jose Village

on Tinian. At the conclusion of this investigation, law enforcement officers identified "Tony" as GUO Zhan Dong.

3. Surveillance officers then provided the CS with instructions that s/he was to travel to the Pacific Laundry with DPS Sgt. Alfred Celes, who would be acting in an undercover capacity, and meet with GUO. During this meeting, the CS and Sgt. Celes would attempt to purchase $250 of methamphetamine from GUO. Surveillance officers then equipped the CS with digital recording and transmitting devices and provided Sgt. Celes with $250 of Official Advance funds ("advance funds"). The CS and Sgt. Celes then departed the meeting area and drove towards the Pacific Laundry while under surveillance from law enforcement officers.

4. At approximately 9:05 p.m., surveillance officers watched the CS and DPS Sgt. Alfred Celes arrive at the Pacific Laundry in Sgt. Celes' vehicle. At approximately 9:11 p.m., surveillance officers saw GUO approach Sgt. Celes' vehicle, where the CS and Sgt. Celes were standing outside the vehicle. Surveillance officers saw GUO speak to the CS and Sgt. Celes for a few minutes, during which time Sgt. Celes and the CS asked GUO for $250 of methamphetamine. After the CS and Sgt. Celes asked GUO for the methamphetamine, GUO walked inside the Pacific Laundry and out of the sight of surveillance officers.

5. At approximately 9:16 p.m., surveillance officers saw GUO walk out of the Pacific Laundry and get into Sgt. Celes' vehicle with Sgt. Celes and the CS. GUO asked Sgt. Celes to drive around the corner from the Pacific Laundry to the J.J. Mart parking lot, because there were too many people in front of the Pacific Laundry. In the parking lot of the J.J. Mart, GUO gave Sgt. Celes three small plastic bags and two foil paper wrapped squares, each containing a crushed, glass-like substance, in exchange for the $250 advance funds. After the exchange between GUO and Sgt. Celes, GUO got out of Sgt. Celes' vehicle and walked back to

2

the Pacific Laundry. Sgt. Celes and the CS then left the area under surveillance from law enforcement officers.

6. When Sgt. Celes and the CS arrived at a pre-arranged meeting location, SA Holcomb retrieved the five packages containing the crushed, glass-like substance from Sgt. Celes. The five packages weighed approximately 0.6 grams and the crushed, glass-like substance field-tested positive for methamphetamine.

7. On January 10, 2008, SA's and TFO's from the Saipan office, in conjunction with CNMI DPS detectives, planned another controlled purchase of methamphetamine from GUO. At approximately 1:33 p.m., surveillance officers equipped Sgt. Celes, who would be acting in an undercover capacity, with digital recording and transmitting devices. Surveillance officers also provided Sgt. Celes with $500 of advance funds to purchase methamphetamine from GUO. Sgt. Celes was then followed to the Pacific Laundry by surveillance officers.

8. At approximately 1:42 p.m., surveillance officers watched Sgt. Celes arrive in the parking lot of the Pacific Laundry. Sgt. Celes got out of his vehicle and walked inside the Pacific Laundry, where he found GUO inside his room. Sgt. Celes negotiated with GUO for $500 of methamphetamine, but GUO told Sgt. Celes that he (GUO) only had $200 of methamphetamine available. GUO then instructed Sgt. Celes to stay in his (GUO's) room while he (GUO) got the methamphetamine. GUO left his room for approximately thirty seconds, and when he returned, he delivered a red Chinese cigarette box to Sgt. Celes. Inside the cigarette box, Sgt. Celes found five cut-off plastic straws, each containing a crushed, glass-like substance. Sgt. Celes then gave GUO $200 of the advance funds and left the Pacific Laundry.

9. Surveillance officers then followed Sgt. Celes back to a pre-arranged meeting location. At the meeting location, Sgt. Celes gave the five plastic straws that contained the

crushed, glass-like substance to SA Holcomb. The five plastic straws weighed approximately 0.4 grams, and the crushed, glass-like substance field tested positive for methamphetamine.

10. After conducting the two controlled purchases described above, CNMI DPS detectives prepared an affidavit in support of a CNMI Superior Court search warrant for GUO's residence and a CNMI Superior Court arrest warrant for GUO. On January 10, 2008, at approximately 6:00 p.m., CNMI DPS detectives received the search and arrest warrants from the CNMI Superior Court.

11. On January 10, 2008, at approximately 8:00 p.m., SA's and TFO's from the Saipan office, in conjunction with CNMI DPS detectives, planned a buy-bust operation of GUO. Sgt. Celes, who would be acting in an undercover capacity, was provided with $200 of advance funds to purchase methamphetamine from GUO. Sgt. Celes was equipped with digital recording and transmitting devices and followed to the Pacific Laundry by surveillance officers.

12. At approximately 9:32 p.m., surveillance officers saw Sgt. Celes arrive at the Pacific Laundry. Sgt. Celes got out of his vehicle and walked into the Pacific Laundry, where he found GUO. Sgt. Celes negotiated with GUO for $200 of methamphetamine, and then watched GUO walk into his (GUO's) room to retrieve the methamphetamine. GUO handed Sgt. Celes four small plastic bags, each containing a crushed, glass-like substance. Sgt. Celes gave GUO the $200 of advance funds and provided the verbal arrest signal to surveillance officers.

13. Surveillance officers, all of who were wearing attire that clearly identified them as police officers, then entered the Pacific Laundry to arrest GUO. Surveillance officers encountered GUO and Sgt. Celes standing in the hallway of the building, and surveillance officers ordered GUO to get on the ground. GUO refused to comply, and after a brief struggle,

he was forced to the ground and handcuffed by surveillance officers. SA Holcomb then retrieved the four small plastic bags that contained the crushed, glass-like substance from Sgt. Celes. The four small plastic bags weighed 0.3 grams, and the crushed, glass-like substance field-tested positive for methamphetamine.

14. Surveillance officers then executed the search warrant for GUO's room. During the search, surveillance officers recovered the $200 of advance funds that Sgt. Celes gave GUO for four small plastic bags of methamphetamine from the hallway where was GUO was standing when they first encountered him. Surveillance officers also recovered the $450 of advance funds given to GUO during the first two controlled purchases from behind the refrigerator in GUO's room. In addition, surveillance officers also recovered a small quantity of MSG, which based on my training and experience, is commonly used to "cut" or dilute crystal methamphetamine.

15. Based on the foregoing information, there is probable cause to believe that GUO has violated 21 U.S.C. §§ 841(a) and (b)(1)(C).

DANIEL G. HOLCOMB, Special Agent
Drug Enforcement Administration

SUBSCRIBED and SWORN to before me this 23 day of January, 2008.

ALEX R. MUNSON
UNITED STATES DISTRICT JUDGE